NO. 07-11-00489-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 25, 2012

_____

IN THE INTEREST OF A.L.D.H., A CHILD

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2010-791,771; HONORABLE BRADLEY S. UNDERWOOD, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

April and Michael Fortner, appellants, appeal the judgment of the trial court denying their petition to terminate the parental rights of Angel Turner to her daughter, A.L.D.H. The Fortners present five issues on appeal. For the reasons stated herein, we will affirm the judgment of the trial court.

Factual and Procedural Background

A.L.D.H. was born on November 5, 2009. At the time of her birth, A.L.D.H. tested positive for drugs. Turner admitted to using drugs during her pregnancy. Shortly after the child's birth, Turner left the hospital and traveled from Lubbock to Amarillo, Texas, in the company of Richard Adkins. During this period of time, Turner continued

to use methamphetamines. On November 14, while returning to Lubbock, Turner was arrested in Plainview, Texas, and her location was unknown to the hospital. During Turner's absence, the hospital was unable to contact anyone regarding the medical treatment for A.L.D.H. The hospital notified the Texas Department of Family and Protective Services (Department) regarding the presence of drugs in the child. Eventually, an investigator for the Department located Turner in the Hale County Jail.

After visiting with the Department's investigator, Turner agreed to a voluntary placement of the child with her relatives, Jerry Don and Stacy Vicks. However, shortly after the agreed placement, the Vicks informed Turner that they were divorcing and would not be able to continue with temporary placement of the child. Stacy suggested that Turner place the child in the temporary care of the Fortners. April Fortner is Jerry Don Vick's sister.

The day following Stacy's suggested temporary placement with the Fortners, Turner met with April in the Hale County Jail. At all times during the pendency of this matter, April has been employed by the Department. Turner agreed to the temporary placement of A.L.D.H. and executed the form for such a placement while incarcerated in the Hale County Jail. The agreement was faxed to the jail from the local office of the Department; however, the Department was not a party to any agreed placement. At the time of the placement, it was agreed that the placement would be temporary until Turner got out of jail and back on her feet. Turner was advised that extended placement with the Fortners might result in the Fortners seeking legal custody of the child. At the time

2

of the execution of the agreement, Turner was not advised that the Fortners intended to seek termination of her parental rights and adoption of the child.

As a result of Turner's arrest, her parole was revoked, and she was sent to prison. While Turner was incarcerated in prison, the Fortners filed an original petition to terminate Turner's parental rights and to adopt the child. Thereafter, a hearing on temporary orders was conducted by the trial court. The trial court appointed the Fortners as Temporary Managing Conservator of A.L.D.H. and Turner as Temporary Possessory Conservator. Turner was released from prison in February 2011. The trial on the termination and adoption petition was held in August of 2011.

As of the commencement day of the trial, A.L.D.H. had been living with the Fortners for all but the first few days of her life. The testimony at trial indicated she was bonded with the Fortners and considered April her mother. The testimony revealed that Turner had been afforded only limited opportunities to visit with the child after her release from prison.

At the trial, the evidence showed that Turner had a significant history of drug abuse. She testified that she had been addicted to drugs for most of her life. However, Turner gave detailed testimony regarding the steps she had taken since her last arrest to stay off of drugs. These included treatment while in prison, outpatient treatment after her release, and continued attendance at AA and NA groups. Her testimony was supported by documentary evidence of her completion of the programs of which she testified. Turner's parole officer testified about Turner's efforts to stay off of drugs and

the requirements for drug testing that apply to Turner. The parole officer further testified that all of Turner's drug tests were negative for the use of illicit drugs.

In addition to the testimony regarding Turner's efforts to rid herself of drug addiction, Turner offered detailed testimony about her efforts during the time she was incarcerated to stay in contact with the Fortners regarding A.L.D.H.'s progress. The trial court heard testimony regarding the efforts Turner had made in preparing herself to be a better parent. These included a number of different parenting classes that were directed specifically at women.

The issue of whether Turner was made aware that the Fortners had always intended to seek to adopt the child was hotly contested. Turner testified that she was unaware that it was the Fortners' plan to attempt to terminate Turner's parental rights and adopt the child until the petition was filed. The Fortners presented testimony that Turner was made aware early on that, if she was sent to prison for any period of time that exceeded six months, termination and adoption was an option. However, the trial court's findings of fact included a finding that Turner had been adamant from the beginning that she was not willing to agree to the termination of her parental rights.

At the conclusion of the trial, the trial court found that it was not in A.L.D.H.'s best interest to terminate the parental relationship existing between Turner and A.L.D.H. Following the trial court's announcement, an order denying the petition to terminate and adopt was entered that also named the Fortners as the non-parent Joint Managing Conservator and Turner as the Possessory Conservator of the child. The order entered did not contain a specific visitation schedule; however, the trial court had admonished

4

all parties that visitation was expected to be worked out between the parties in an effort to ease the transition of A.L.D.H. back to Turner. Subsequently, the trial court, on its own motion, modified the conservatorship order to require the parties to cooperate in the transition process through the use of a child specialist to aid in formulating a transition plan.

The Fortners filed a motion for new trial and an amended motion for new trial. The motions contend that there was newly discovered evidence that would result in a different outcome. The essence of the newly discovered evidence was that the biological father, Eric Hair, had executed a relinquishment of parental rights after the trial court's ruling. Additionally, the Fortners contend that psychologist Shaun H. Keel, EdD, had prepared additional reports regarding the child. The motion was overruled by operation of law.

The Fortners' appeal presents five issues for our consideration. First, the trial court abused its discretion in denying the petition to terminate and adopt. Second, the trial court erred in determining that there is a parental presumption applicable to the facts of the case. Third, the trial court abused its discretion in entering its findings of fact and conclusions of law. Fourth, the trial court erred in refusing to admit an expert report. And, fifth, the trial court erred in failing to grant a new trial. Disagreeing with the Fortners, we will affirm the trial court's judgment denying the petition to terminate and adopt.

Denial of Petition to Terminate and Adopt

## Applicable Law

We begin with the observation that the relationship existing between a parent and a child is of such importance that it is considered to be of a constitutional dimension. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Accordingly, appellate courts strictly construe the termination proceeding. See In re G.M., 596 S.W.2d 846, 846 (Tex. 1980). Further, the law accords a strong presumption that the best interest of the child is served by maintaining the parent child relationship. In re T.N., 180 S.W.3d 376, 382 (Tex.App.—Amarillo 2005, no pet.) (citing In re G.M., 596 S.W.3d at 847). In fact, due process dictates a parent's relationship to a child can only be severed by clear and convincing evidence. See id. The Family Code defines clear and convincing evidence as "that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008). As the petitioners in the action to terminate the parental rights of Turner and adopt the child, the Fortners had the burden of establishing by clear and convincing evidence that termination was in the best interest of the child. See Vasquez v. Tex. Dep't of Protective & Regulatory Servs., 190 S.W.3d 189, 196 (Tex.App.—Houston [1st Dist.] 2005, pet. denied).

## Standard of Review

In addressing this standard of review, we note that both the Fortners and Turner have cited the Court to the standard of review utilized in review of an order terminating the parental rights. However, as noted above, we are dealing with a judgment that

6

denied the termination as not being in the best interest of the child. Next, as pointed out above, the appealing parties, the Fortners, had the burden of proof on the issue now being appealed. Thus, we feel that the proper standard of review as to the legal sufficiency of the evidence is as set forth below.

Legal Sufficiency

In reviewing the challenge to the legal sufficiency of the trial court's denial of the petition to terminate, we apply the as-a-matter-of-law standard of review. See In re D.S.G., No. 13-10-00683-CV, 2011 Tex. App. LEXIS 6081, at *8 (Tex.App.—Corpus Christi Aug. 4, 2011, no pet.) (mem. op.) (citing Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989)). This means that, in the case before the Court, the Fortners must show that the evidence established, as a matter of law, all vital facts supporting the issue. See id. (citing Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam)).

Factual Sufficiency

Normally, when challenging the factual sufficiency of the evidence to sustain a factfinder's resolution of an issue that the appealing party bore the burden of proof on, the appealing party is required to establish that such a finding was against the great weight and preponderance of the evidence. See Dow Chem. Co., 46 S.W.3d at 242. However, such is inadequate when reviewing a finding in a termination case where the burden of proof was by clear and convincing evidence. In re J.F.C., 96 S.W.3d 256, 264-66 (Tex. 2002). If we were reviewing the factfinder's answer that termination was in the best interest of the child, the standard would be whether the evidence is such that a

factfinder could reasonably form a firm belief or conviction about the truth of the movant's allegations.  See In re C.H., 89 S.W.3d 17, 25 (Tex. 2002).  Because we are faced with the factfinder's answer that termination is *not* in the best interest of the child, we must review the evidence to ascertain if the evidence was of such a character that it had to produce in the mind of the factfinder a firm belief or conviction that termination was in the best interest of the child.  See id.

Analysis of the Legal Sufficiency

In conducting a legal sufficiency review, we must review the entire record in the light most favorable to the finding of the trier of fact.  In re J.F.C., 96 S.W.3d at 266.  In so doing, we assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so.  Id.  Likewise, we should disregard all evidence that a reasonable factfinder could have disbelieved or found incredible.  Id.  However, we do not disregard all evidence that does not support the finding, as disregarding undisputed facts that do not support the finding could skew the analysis.  Id.

We note that witness credibility issues "that depend on appearance and demeanor cannot be weighed by the appellate court."  In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005) (per curiam).  Even when credibility issues are reflected in the transcript, the appellate court must defer to the factfinders' determinations, at least so long as those determinations are not themselves unreasonable.  Id.

The record before this Court established several things: 1) Turner had at least a 35-year history of drug abuse that began at age 11 or 12; 2) A.L.D.H. was born addicted to methamphetamine; 3) Turner left the hospital at a time when the child was in

8

neonatal intensive care; 4) Turner was arrested while traveling back to Lubbock, where the child was, from Amarillo; 5) as a result of her arrest, Turner's parole was revoked, and she was sent back to prison; 6) prior to being sent back to prison, Turner arranged for a family placement for A.L.D.H. with Stacy and Jerry Vick; 7) prior to being sent to prison, Turner was advised that the family placement would not work because the Vicks were divorcing; 8) at the suggestion of Stacy Vick, Turner agreed to a voluntary placement with the Fortners; 9) the Fortners provided a nurturing and loving home for A.L.D.H. and have bonded with her; 10) at all times relevant, April was an employee of the Department in the Children's Protective Services (CPS) section; 11) Turner agreed to the temporary placement with the Fortners, however; Turner has consistently disagreed with any permanent placement; 12) Turner was released from prison, quickly had her parole transferred, and then moved to Midland, Texas; 13) since moving to Midland, Turner has maintained sobriety and has not had any positive drug tests; 14) Turner has completed an inpatient drug rehabilitation program prior to release from prison; 15) Turner has attempted to visit with the child; however, many attempts at visitation have resulted in no visitation being allowed; 16) Turner had a son who was the subject of an ongoing CPS investigation regarding his placement in Turner's step-mother's home; 17) Turner's son has been placed in her care and custody by CPS without any limitations; and 18) Turner has married and has established a home in Midland, Texas, where she is employed.

As the trial court noted when announcing his decision, if ever foster parents could have earned the right to adopt a child, the Fortners would have earned the right in this case. However, the best interest of a child is not a comparative contest in which a non-

9

parent party can earn the right to terminate a parent's parental rights so the non-parent might adopt the child. See In re C.E.K., 214 S.W.3d 492, 498-99 (Tex.App.—Dallas 2006, no pet.) (quoting In re D.M., 58 S.W.3d 801, 814 (Tex.App.—Fort Worth 2001, no pet.) "the best interest standard does not permit termination merely because a child might be better off living elsewhere"). Rather, it is based upon considerations and elements that make up the best interest test as outlined in Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). A review of these factors reveals the following: 1) the child is too young to voice an informed desire; 2) the Fortners have met the child's current emotional needs; however, there is no evidence that Turner will not be able to meet those needs in the future; 3) although transition will be difficult, there is no evidence that Turner presents an emotional or physical danger to the child; 4) both the Fortners and Turner have the parenting abilities to meet the child's needs; and 5) both the Fortners and Turner present a stable home environment. Granted, Turner's previous conduct might otherwise indicate that the existing parent-child relationship is not a proper one. However, the trial court heard the explanation offered by Turner, along with the admission of all her past wrongs, and still determined that it was not in the child's best interest to terminate the parent-child relationship. It is illustrative that, in its findings of fact, the trial court used the phrase "There is credible evidence" and then described the fact, as this highlights that much of the evidence the trial court heard turned on the issue of credibility of the witness. As an appellate court, we cannot reweigh that evidence and alter those credibility determinations. In re J.P.B., 180 S.W.3d at 573. In the final analysis, we cannot say that the Fortners have proven as a matter of law, by clear and

convincing evidence, that termination of Turner's parental rights is in the best interest of A.L.D.H. See In re D.S.G., 2011 Tex. App. LEXIS 6081, at *8.

Analysis of Factual Sufficiency

A review of the same evidence, even in a neutral light, yields the same result on the issue of factual sufficiency of the evidence. The evidence that the trial court heard on the issue of the best interest of the child can be best described as contested. As in a legal sufficiency review, it is the factfinder who is responsible to resolve the conflicts in the testimony and pass upon the credibility of the witnesses. See In re R.D.S., 902 S.W.2d 714, 716 (Tex.App.—Amarillo 1995, no writ). Additionally, we note that the psychologist, Shaun Keel, EdD testified that it would be in the best interest of the child to terminate the parent-child relationship between Turner and the child. This was, according to the psychologist, because of the significant bonding that had occurred between the Fortners and A.L.D.H. The psychologist further testified that it would be traumatic for A.L.D.H. to be taken from the Fortners' custody. However, we note that there was also considerable testimony from Turner about problems she had faced in trying to see her child. According to this testimony, the Fortners were attempting to keep her from being able to bond with A.L.D.H. by denying her meaningful visitation. As stated above, it was the factfinder's duty to resolve this conflicting testimony. See id. We cannot say that the evidence offered by the Fortners was of such a character that it had to produce in the mind of the factfinder a firm belief or conviction that termination was in the best interest of the child. See In re C.H., 89 S.W.3d at 25.

11

<u>Conclusion-Sufficiency of the Evidence</u>

Because we have found that the evidence did not prove as a matter of law that termination of the parent-child relationship was in the best interest of the child and the evidence at trial would not necessarily lead the factfinder to form a firm belief or conviction that termination is in the best interest of the child, we overrule the Fortners's first issue.

Parental Presumption

The Fortners' second issue contends that the trial court abused its discretion by stating in conclusion of law number six that "there is a parental presumption in this suit." We review a conclusion of law as a legal question. <u>See</u> <u>BMC Software Belg., N.V. v. Marchand</u>, 83 S.W.3d 789, 794 (Tex. 2002). Therefore, our review is a *de novo* review of a question of law. <u>Id</u>.

This conclusion of law is reversible error, according to the Fortners, because the only statutory parental presumption is in Family Code section 153.131(a) and that section does not apply because this is a modification under chapter 156 of the Family Code. However, the Fortners seem to miss the mark in regards to this conclusion of law.

When read in context, conclusion number six is directed at the suit to terminate the parent-child relationship and not the subpart regarding the appointment of a managing conservator. Conclusion number four references the standing of the Fortners to file a petition to terminate the parent-child relationship and adopt the child.

12

Conclusion number seven states that the Fortners had established one of the grounds for termination under section 161.001(1). Conclusion number eight then states that the Fortners have failed to prove that termination was in the best interest of the child.

As can be seen by the context, conclusion number six was directed to the presumption the law affords a parent that the best interest of the child is served by maintaining the parent-child relationship. See In re R.R., 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); In re T.N., 180 S.W.3d at 382. This is a correct statement of the law, and, therefore, the trial court was not in error. See Tex. Dep't of Pub. Safety v. Stockton, 53 S.W.3d 421, 423 (Tex.App.—San Antonio 2001, pet. denied) (observing that trial court's conclusion of law will be upheld if judgment is sustainable on any legal theory supported by evidence). Accordingly, the Fortners' second issue is overruled.

Error in Findings of Fact and Conclusions of Law

The Fortners' third issue is multifarious in that it is attacking several of the findings of fact and conclusions of law entered by the trial court. We note that most of the complaints addressed in this third issue are simply restatements of the Fortners' complaints regarding the sufficiency of the evidence and the issue regarding the parental presumption; therefore, to the extent that such complaints have been previously addressed, we will not again address the issues except to refer the parties to our discussion under the first and second issues.

Standard of Review

As this matter was tried without a jury and the trial court filed findings of fact and conclusions of law, we treat those findings with the same force and dignity as a jury's verdict upon jury questions. See Latch v. Gratty, Inc., 107 S.W.3d 543, 545 (Tex. 2003) (per curiam) (citing Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex.1994)). The trial court's findings of fact are reviewed for legal and factual sufficiency of the evidence under the same standards as applied to jury findings. See In re Marriage of Harrison, 310 S.W.3d 209, 211 (Tex.App.—Amarillo 2010, pet. denied) (citing Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.1996)).

The trial court's conclusions of law are not reviewable from an evidentiary standpoint, however; we may review the conclusions drawn from the facts to determine their correctness. See id. at 212 (citing Ashcroft v. Lookadoo, 952 S.W.2d 907, 910 (Tex.App.—Dallas 1997, writ denied) (en banc)).

Initially, the Fortners complain about finding of fact one and conclusion number three regarding the father's not filing an answer. While it is true that the Fortners did file a motion for new trial claiming newly discovered evidence in this case--an affidavit of relinquishment signed by the father--the record does not contain any order by the trial court which acted upon this newly discovered evidence; therefore, the motion for new trial was overruled by operation of law. See TEX. R. CIV. P. 329b(c). The propriety of the trial court's denial of a new trial is the subject of the Fortners' issue five and will be addressed in that section of this opinion. Inasmuch as the record supports the fact that the father had filed no answer at the time judgment was signed and the findings of fact

14

and conclusions of law were requested, the trial court's findings of fact and conclusions of law and are correct.

The Fortners next attack findings of fact three that it is in the child's best interest to be placed with her mother, Turner. What follows is a restatement of the Fortners' first issue in the guise of attacking the findings of fact. Having found that the evidence is legally and factually sufficient to support the trial court's judgment of denial of the termination petition, we will not again address the contentions otherwise but will refer the parties to our discussion of the Fortners' first issue.

We reach the same conclusion in addressing the Fortners' attack as to conclusion number eight that the Fortners failed to prove that termination was in the best interest of the child. We refer the parties to our discussion of the Fortners' first issue.

The Fortners next contend that the trial court erred in considering the evidence of the return of Turner's son (Kenny) to her. However, a reading of the record reveals that it was the Fortners' examination of Turner that first introduced the subject of Kenny into this trial. A fair reading of the record would indicate that the Fortners were attempting to show that Turner had used drugs during her pregnancy with Kenny and that she had allowed him to be raised by relatives. After such an examination, the trial court heard the testimony that Kenny had been returned to Turner based upon a number of considerations, many of which could be considered to be relevant to the issue of the best interest of A.L.D.H. Therefore, we cannot say the trial court committed any error in considering these facts and addressing this consideration in his conclusion of law eight.

15

The trial court's conclusion number fourteen concerns Kenny and the steps Turner has taken to reacquire custody of him. For the same reasons outlined above, this conclusion can be considered to be relevant to the overarching issue of the best interest of A.L.D.H.

The Fortners' attack on conclusion number fifteen, that Turner can provide adequate stability for A.L.D.H., has future plans for providing for the child, has established safety measures to prevent injury to the child, is simply another attack on the sufficiency of the evidence. These areas touched on in conclusion number fifteen are consistent with the considerations outlined in Holley v. Adams and addressed in our discussion of the evidentiary sufficiency in the Fortners' first issue. See 544 S.W.2d at 371-72.

Likewise, the Fortners' argument as to the parental presumption has been previously addressed in the discussion of their second issue.

Having found that the trial court did not err regarding these matters, the Fortners' third issue is overruled.

## Admission of Psychologist Report

The Fortners next complain that the trial court committed reversible error in not allowing the report prepared by Shaun H. Keel, EdD to be admitted over a hearsay objection. Dr. Keel had prepared a bonding assessment regarding the bonding that had taken place between the Fortners and A.L.D.H. and her observations of Turner's interaction with the child. The record reflects that after Dr. Keel was sworn in and her

16

credentials had been established, she was asked to identify Petitioners' Exhibit 1, which she testified was her report. The report was then offered, and an objection was lodged against the admission of the report. The trial court sustained the hearsay objection. Following this exchange, Dr. Keel testified about all of her observations regarding the Fortners and the child and Turner and the child. At no point was Dr. Keel prevented from giving her opinion regarding the child and the best interest of the child.

Assuming, without deciding that the trial court erred in denying the admission of the report, such a ruling is not reversible error. This is so because, for a ruling excluding evidence to be reversible error, the error must have probably caused the rendition of an improper judgment. See State v. Cent. Expressway Sign Assocs., 302 S.W.3d 866, 870 (Tex. 2009). Evidence that is cumulative results in the harm likely being harmless. Id.

The report in question was cumulative of the testimony offered by the witness. The Fortners were allowed to question the witness at length, and the witness consistently referred to the report to refresh her memory, as necessary. Under these facts, any error in denying admission of the report was harmless. See TEX. R. APP. P. 44.1(a)(1).

## Motion for New Trial

After the trial court entered its judgment denying the petition to terminate and adopt, the Fortners filed an original and an amended motion for new trial. These motions for new trial alleged that a new trial was warranted for several different reasons. On appeal the Fortners limits their complaint to a contention that newly discovered

17

evidence requires that this Court overturn the judgment and remand the case for a new trial. The evidence at issue is the affidavit of relinquishment of A.L.D.H.'s father, Eric Hair. From the record, we observe that the affidavit was made a part of both the original and amended motion for new trial.

Standard of Review

Denial of a motion for new trial is reviewed for abuse of discretion. See Waffle House, Inc. v. Williams, 313 S.W.3d 796, 813 (Tex. 2010). A party seeking a new trial on the basis of newly discovered evidence must demonstrate to the trial court that 1) the evidence has come to its knowledge since the trial, 2) its failure to discover the evidence sooner was not due to lack of diligence, 3) the evidence is not cumulative, and 4) the evidence is so material it would probably produce a different result if a new trial were granted. Id.

Analysis

The record before us contains only the original and amended motion for new trial. Neither one is sworn, and each contains only the most conclusory allegations that the affidavit of relinquishment of the father was discovered after the trial and that the Fortners had diligently pursued this evidence. See id. What is missing is any information that would allow the trial court to ascertain whether the Fortners used due diligence in trying to obtain this affidavit of relinquishment before the trial commenced. Likewise, regarding a different result being obtained on a new trial, the motion speaks only in reference to the termination of Hair's parental rights and does not mention or

18

demonstrate how this affidavit would produce any different result regarding Turner's parental rights. See id.

On the record before this Court, we cannot say that the trial court abused its discretion by allowing the motion for new trial to be overruled by operation of law. See id.

Conclusion

Having overruled the Fortners' issues, we affirm the judgment of the trial court.


Mackey K. Hancock<br>Justice