**Opinion filed February 5, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00154-CV

_____

## IN THE INTEREST OF A.S. AND B.S., CHILDREN

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-5379-AD**

### M E M O R A N D U M   O P I N I O N

This appeal stems from an order in which the trial court denied a request to terminate the parental rights of Appellee, the biological father of A.S. and B.S. The children's mother (Tiffany) and her husband, who together had filed a petition for termination and adoption, appeal. In its order, the trial court ruled that Appellants had not proven by clear and convincing evidence that termination would be in the children's best interest. We affirm.

*Issues*

Appellants present seven issues for review. However, we need only address the final three issues as those are dispositive of the appeal.[1]  *See* TEX. R. APP. P. 47.1.  In their fifth and sixth issues, Appellants challenge the legal and factual sufficiency of the evidence to support the trial court's finding that termination of Appellee's parental rights would not be in the best interest of A.S. and B.S.  In their seventh issue, Appellants complain that the trial court abused its discretion in refusing to interview A.S. and B.S. in chambers.

*Denial of Petition to Terminate*

The relationship existing between a parent and a child is of such importance that it is considered to be of constitutional dimension. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).  Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014).  To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.  In the present case, the trial court did not make any ruling or finding as to whether Appellee had committed any of the acts listed in Section 161.001(1).  The trial court made only one finding: that Appellants failed to prove by clear and convincing evidence that termination would be in the children's best interest. *See id.* § 161.001(2).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).  But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical

---

[1]In their first four issues, Appellants assert that the evidence was legally and factually sufficient to support findings under Section 161.001(1)(E) and (Q) of the Family Code. *See* TEX. FAM. CODE ANN. § 161.001(1) (West 2014).  In its order, the trial court did not rule on or address Section 161.001(1).

needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

When a parent whose rights have been terminated appeals and challenges the legal sufficiency of the evidence, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). In that same scenario, when addressing the factual sufficiency of the evidence, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

In this case, however, the appeal is not from an order of termination but from an order denying a petition for termination. Appellants, as the petitioners at trial, had the burden of proof at trial. Thus, they had the burden of establishing by clear and convincing evidence that termination of Appellee's parental rights would be in the best interest of A.S. and B.S. *See In re A.L.D.H.*, 373 S.W.3d 187, 192 (Tex. App.—Amarillo 2012, pet. denied); *see also Burns v. Burns*, 434 S.W.3d 223, 227 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

When an appellant attacks the legal sufficiency of an adverse finding on an issue on which the appellant had the burden of proof, the appellant must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)). Thus, to prevail on their legal sufficiency challenge, Appellants must show that the evidence at trial established as a matter of law, or conclusively established, that it would be in the best interest of A.S. and B.S. to terminate Appellee's parental rights. *See Dow Chem.*, 46 S.W.3d at 241; *A.L.D.H.*, 373 S.W.3d at 192.

When an appellant challenges the factual sufficiency of the evidence to support a finding on an issue on which the appellant bore the burden of proof at trial, the appellate court must consider and weigh all of the evidence and, generally, can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem.*, 46 S.W.3d at 242. However, when the appeal is from the denial of a petition to terminate parental rights—where the burden of proof at trial is proof by clear and convincing evidence instead of proof by a preponderance of the evidence, we review the entire record and must "determine whether the trial court's failure to form a firm conviction or belief that a parent's rights must be terminated is contrary to the overwhelming weight of the evidence and clearly wrong." *Burns*, 434 S.W.3d at 227. The court in *A.L.D.H.* stated that, when the appellant is challenging the trial court's finding that termination is not in a child's best interest, the appellate court "must review the evidence to ascertain if the evidence was of such a character that it had to produce in the mind of the factfinder a firm belief or conviction that termination was in the best interest of the child." *A.L.D.H.*, 373 S.W.3d at 193. Additionally, we note that we are not to reweigh the evidence or judge the credibility of the witnesses and that we must

4

defer to the trial court's credibility determinations as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573.

The record in this case shows that Appellee and his children had a wonderful relationship until June 5, 2012, when Appellee committed an act that detrimentally affected his children. At that time, Appellee's daughter, A.S., was twelve years old and his son, B.S., was ten years old. On June 5, 2012, Appellee, who was suffering from severe depression, threatened to commit suicide. Appellee sent Tiffany a text indicating his intent to kill himself, and Tiffany called the police and requested that the police conduct a welfare check on Appellee. When the police arrived at Appellee's home, Appellee "slammed the door in their face and then fired two shots out of his back door." After a two-hour standoff, Appellee texted Tiffany to tell her that he would kill himself outside so as not to make a mess inside the house and to ask her to promise him that she would take care of their children. Appellee then came out of the house with a gun, was shot by the police, and was taken into custody. As a result of the June 5, 2012 incident, Appellee subsequently pleaded guilty to four counts of aggravated assault on a public servant and received a ten-year sentence.

Prior to the June 5 incident, Appellee and Tiffany had joint custody of the children. The couple had divorced in 2008, and they agreed to an even split in custody; the children spent every other week with Appellee. Appellee was a loving, nurturing, hands-on father prior to the June 5 incident. By all accounts, Appellee loved his children and they loved him; Tiffany agreed at trial that the children still love Appellee and that Appellee still loves them.

After the June 5 incident, the children suffered emotionally and required counseling. The children have had limited contact with Appellee since his arrest: a few phone calls and several letters. At the time of trial, A.S. was fourteen years old, and B.S. was twelve years old. They had stopped writing Appellee and did not

want to have any contact with him. The children had bonded with their stepfather and asked to be adopted by him. A.S. and B.S. told Tiffany that they "don't want [Appellee] to be their dad, they want [their stepfather] to be their dad." Tiffany testified that she believed it would be in the children's best interest for Appellee's parental rights to be terminated and for the children to be adopted by their stepfather.

Appellee, who testified at trial by telephone, disagreed with Tiffany's assessment; he did not believe that terminating his parental rights would be in the children's best interest. He explained that he knew he had hurt the children by his actions on June 5, 2012. He understood that they were mad at him and believed that "a large part of that healing, the only way it's going to come, is by resuming a relationship with" Appellee so that they can work through the process together. Appellee had spent twelve years with A.S. and ten years with B.S. prior to his incarceration and testified that, during that time, he and the children had a strong bond. Appellee's mother and one of his friends also testified about the strong bond that the children had had with Appellee.

Appellee offered into evidence two letters from A.S. to Appellee and one letter from B.S. to Appellee. In a letter written on March 10, 2013, A.S. expressed her anger with Appellee and stated, "I love you and all, but I am still mad at you for not being strong enough to overcome the devil's power. I hope that one day I will calm down and let you see me again." B.S. wrote in a letter that was postmarked November 5, 2012, that he was sorry and that, if he had known Appellee was so depressed, he would have gotten help. B.S. also promised to "lose more weight" and stated, "You were a great dad, both of us love you a lot."

The attorney ad litem for the children informed the trial court that she had "had an opportunity to visit firsthand" with the children and "to be in their home, watch their interaction with their mother and [stepfather]." The attorney ad litem

believed that termination of Appellee's parental rights would be in the best interest of the children. She informed the trial court that the children were bright, intelligent, and articulate; that they knew what they wanted; and that they had not been coerced or coached. The attorney ad litem explained the harm that the children had suffered as a result of Appellee's actions on June 5, 2012, including being in the press, losing friends, losing a church home, having to change schools, and knowing that their father wanted to kill himself. According to the attorney ad litem, the children do not want to have any contact with Appellee, and they are trying to forgive Appellee and move forward with "a father [their stepfather] and with their mother who makes them feel safe and secure."

Based upon the evidence in the record and the *Holley* factors, we cannot hold that Appellants established as a matter of law, or conclusively established, that it would be in the best interest of A.S. and B.S. to terminate Appellee's parental rights. Nor can we hold that the trial court's failure to form a firm conviction or belief that Appellee's rights must be terminated was contrary to the overwhelming weight of the evidence and clearly wrong or that the evidence was of such a character that it had to produce in the mind of the factfinder a firm belief or conviction that termination was in the best interest of A.S. and B.S. Even Tiffany admitted at trial that the issue of termination was not a "[r]ight and wrong, black and white" situation and that there were "shades of gray" with respect to the issue. We overrule Appellants' fifth and sixth issues.

*Refusal to Interview Children*

In their seventh issue, Appellants assert that the trial court abused its discretion by refusing to interview the children in chambers as requested by Appellants. Appellants rely upon Section 153.009 of the Family Code as support for their contention. *See* FAM. § 153.009. Section 153.009 provides in part as follows:

(a) In a nonjury trial or at a hearing, on the application of a party, the amicus attorney, or the attorney ad litem for the child, the court shall interview in chambers a child 12 years of age or older and may interview in chambers a child under 12 years of age to determine the child's wishes as to conservatorship or as to the person who shall have the exclusive right to determine the child's primary residence. The court may also interview a child in chambers on the court's own motion for a purpose specified by this subsection.

(b) In a nonjury trial or at a hearing, on the application of a party, the amicus attorney, or the attorney ad litem for the child or on the court's own motion, the court may interview the child in chambers to determine the child's wishes as to possession, access, or any other issue in the suit affecting the parent-child relationship.

(c) Interviewing a child does not diminish the discretion of the court in determining the best interests of the child.

The record shows that Appellants requested that the trial court confer with the children because the children wanted to speak to the court. The trial court refused to interview the children because the court could not find "any authority" to do so in a termination proceeding.

Even if the trial court abused its discretion in refusing to interview the children, we cannot hold that the error, if any, constitutes reversible error. Both Tiffany and the children's attorney ad litem expressed the children's desires to the trial court, and those desires were for the trial court to terminate Appellee's parental rights and to permit their stepfather to adopt them. Furthermore, Appellants made no offer of proof as to what the children would have said if they had been interviewed by the trial court. For these reasons, we cannot hold that the error, if any, in refusing to interview the children in chambers probably caused the rendition of an improper judgment or probably prevented Appellants from properly presenting their case on appeal. *See* TEX. R. APP. P. 44.1(a). Appellants' seventh issue on appeal is overruled.

*This Court's Ruling*

We affirm the order of the trial court.

JOHN M. BAILEY

JUSTICE

February 5, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.