MOORE, Judge.
The Dallas County Department of Human Resources (“DHR”) appeals from a judgment entered by the Dallas Juvenile Court (“the juvenile court”) denying DHR’s petition to terminate the parental rights of A.S. and M.S. (“the parents”) to M.A.S. (“the child”). We affirm the juvenile court’s judgment.

Procedural History

On August 19, 2014, DHR filed a petition to terminate the parents’ parental rights to the child. On December 1, 2015, the juvenile court entered a judgment, stating, in pertinent part:
“1. This is a medically fragile child who has extreme, life threatening health issues involving kidneys that are not functioning and renal failure. This child requires an extraordinary level of care to maintain her health and life. This requires a high level of capability on the part of the caretakers.
“2. This child is receiving excellent care from the present foster parents and the child is flourishing and experiencing the highest quality of life that she could expect given her health condition. Also, the foster parents have done a wonderful and amazing job of keeping the parent/child relationship between the biological parents and the child intact and flourishing.
“3. The biological parents of this child are loving parents who have been very attentive to this child and have traveled 6 hours round trip every other weekend to visit. They have also visited on all holidays, and talk with this child every night." It is clear that these parents love their child very much and would never do anything that would intentionally harm their child.
“4. The Court, however, finds that the parents do not have the ability to properly care for the health of this child and her extreme and life threatening medical condition. They have proven by past behavior that they are not able to: 1) properly administer the prescribed medicines, 2) keep a log of the medical information that is necessary for the child’s health, 3) ... follow the doctor’s orders for nutrition, 4) care for the catheter port, 5) or to generally meet the high level of care necessary for this child’s very survival. The Court gave the parents an opportunity to provide the care for this child with the assistance of family and medical professionals by giving custody back to them on April 15, 2013, but the child almost died *961 as a result of the parents’ inability to take proper care of this child. Also, the Court does not believe that the parents will be able to take care of the medical needs of the child in the foreseeable future.
“5. The Court is satisfied that there are not any family resources available that could or would take the responsibility of custody and care of this extremely medically fragile child.
“6. This is a unique and difficult case because the parents are very loving and attentive, but are not able to care for the child’s extreme medical condition. The Court also believes that the child would probably not survive if the parents had physical custody of the child.
“7. The Court also finds that the child has a very strong and loving bond with her parents and with the foster parents. The child would want to live with her biological parents if she could. The Court believes it would be very traumatic and harmful to this child if her parents’ rights were terminated.
“Accordingly, after carefully considering all of the evidence, the Court denies DHR’s Petition for Termination of Parental Rights....”
On December 15, 2015, DHR filed a post-judgment motion; that motion was denied on December 18, 2015. DHR filed a timely notice of appeal.

Standard of Review

On appeal from a judgment declining to terminate parental rights on a petition filed by DHR, this court will affirm the judgment unless DHR was entitled to judgment as a matter of law. See Montgomery Cty. Dep’t of Human Res. v. A.S.N., 206 So.3d 661, 676 (Ala.Civ.App.2016) (Moore, J., concurring in the rationale in part and concurring in the result) (citing In re A.L.D.H., 373 S.W.3d 187, 192-93 (Tex.Ct.App.2012)). In order to meet that burden, DHR must demonstrate that the law, as applied to the undisputed evidence in the record, requires termination of parental rights. Id. DHR does not satisfy that standard in this appeal.

Discussion

Section 12-15-319(a), Ala.Code 1975, a part of the Alabama Juvenile Justice Act (“the AJJA”), § 12-15-101 et seq., Ala.Code 1975, provides, in pertinent part:
“If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents.”
Section 12-15-319 sets out the statutory grounds for terminating parental rights, but it does not mandate termination if those grounds to terminate are proven. In using the term “may,” § 12-15-319 recognizes that a juvenile court can, in exercising judicial discretion, decline to terminate parental rights. See Talladega Cty. Dep’t of Human Res. v. J.J., 187 So.3d 705, 714 (Ala.Civ.App.2015). Thus, even when clear and convincing evidence proves that a parent cannot discharge his or her parental responsibilities to and for the child, a juvenile court may nevertheless deny a petition to terminate parental rights if some less drastic alternative that better serves the interests of the child can be employed to safeguard the child from parental harm. See Ex parte Beasley, 564 So.2d 950 (Ala.1990).
In many cases, when a juvenile court finds that a child’s natural parents cannot safely or responsibly parent the child, the best interests of the child would *962 be served by severing the rights of the natural parents so that the child may escape parental harm and forge a new beneficial parental relationship, whether de jure or de facto. However, that is not always the case. In some cases, even those involving unfit parents, terminating parental rights would not inure to the overall benefit of the child.
‘“[I]f, notwithstanding the unfitness of a parent, there remains a significant emotional bond between a child and an unfit parent, and it has been demonstrated that some alternative-placement resource would allow the child to visit periodically with the unfit parent so as to reap the benefit of partially preserving that relationship without incurring the harm of the child being raised on a day-to-day basis by an unfit parent, the court would be required to weigh the advantage of that arrangement against the advantage of termination and placement for adoption with permanent fit parents, and to decide which of these alternatives would be in the child’s best interest.’ ”
C.M. v. Tuscaloosa Cty. Dep’t of Human Res., 81 So.3d 391, 397 (Ala.Civ.App.2011) (quoting D.M.P. v. State Dep’t of Human Res., 871 So.2d 77, 95 n. 17 (Ala.Civ.App.2003) (plurality opinion)); see also J.R.L. v. M.B., 86 So.3d 398, 404 (Ala.Civ.App.2011) (reversing a judgment terminating a mother’s parental rights after determining that maintaining the status quo was in the best interests of the child because the mother loved the child, the mother “had visited the child at every opportunity,” and the child’s custodians “did not intend to discontinue contact between the mother and the child”).
In the present case, DHR does not challenge the juvenile court’s findings regarding the emotional bond that exists between the child and the parents. DHR also does not dispute that continued foster care would ensure that the medical needs of the child are met while allowing the child continued visitation and contact with the parents. DHR maintains, however, that termination of parental rights would provide the child permanency without depriving the child of her relationship with the parents because the foster parents have agreed that they would allow the parents to continue to visit with and to contact the child if the foster parents adopt the child.
“However, Alabama law provides that a judgment terminating parental rights concludes the parent’s right to any contact or association with the child. See Ex parte M.D.C., 39 So.3d 1117, 1124 (Ala.2009) (quoting M.D.C. v. K.D., 39 So.3d 1105, 1112 (Ala.Civ.App.2008) (Moore, J., dissenting)) (‘ “A judgment terminating parental rights immediately and permanently severs the parent’s right to custody, control, and affiliation with the child.”’). Alabama law does not provide a mechanism, such as a so-called ‘open adoption,’ see [Kristina V.] Foehrkolbt, When the Child’s Best Interest Calls for It: Post-Adoption Contact By Court Order in Maryland, 71 Md. L.Rev. 490,] 509 [(2012)], which would allow for a parent whose parental rights have been severed to maintain a legally enforceable right to continued visitation with his or her child.”
C.S. v. Mobile Cty. Dep’t of Human Res., 166 So.3d 680, 688 (Ala.Civ.App.2014) (Moore, J., concurring in the result in part and dissenting in part).
Based on the loving relationship between the parents and the child, the juvenile court determined that termination of the parents’ parental rights, carrying with it the loss of an enforceable right of visitation, actually would harm the child. On the other hand, the juvenile court, as a proper exercise of its judicial discretion, decided, based on the evidence, that it *963 would be beneficial to the child to maintain the status quo rather than to terminate parental rights. See B.A.M. v. Cullman Cty. Dep’t of Human Res., 150 So.3d 782, 786 (Ala.Civ.App.2014) (“Our supreme court has held that a juvenile court should maintain foster care or another third-party custodial arrangement without terminating parental rights when a child shares a beneficial emotional bond with a parent and the custodial arrangement ameliorates any threat of harm presented by the parent.”). DHR has not demonstrated that the juvenile court committed any legal error in this respect. Instead, it asks this court to reweigh the evidence to reach a different conclusion. That we cannot do. The judgment of the juvenile court is therefore affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
THOMAS, J., concurs in the result, without writing.