MOORE, Judge,
concurring in the result.
The Montgomery County Department of Human Resources (“DHR”) appeals from the denial of its petition to terminate the parental rights of T.S. (“the mother”) and K.A. (“the father”). In its judgment, the Montgomery Juvenile Court (“the juvenile court”) determined that DHR did not discharge its burden of proving grounds for termination of the parents’ parental rights by clear and convincing evidence. See Ala. Code 1975, § 12-15-319 (requiring “clear and convincing evidence, competent, material, and relevant in nature” to terminate parental rights). On appeal, DHR argues that the juvenile court erred in determining that DHR had failed to sustain its burden of proof. *1269 Montgomery Cty. Dep’t of Human Res. v. A.S.N., 206 So.3d 661, 676 (Ala.Civ.App.2016) (Moore, J., concurring in the rationale in part and concurring in the result).
*1268 “I have not located any Alabama caselaw specifically addressing the standard of review this court should employ to determine whether a juvenile court erred in concluding that DHR did not prove grounds for termination by sufficient evidence. As a general rule, this court may not reweigh the evidence in a termination-of-parental-rights proceeding. See Ex parte T.V., 971 So.2d 1 (Ala.2007). Thus, it would seem that this court can determine only that the juvenile court erred in its weighing of the evidence if DHR is entitled to a judgment as a matter of law, i.e., that no evidence supports the factual determinations necessary to the judgment and that the evidence supports only a determination that grounds for termination exist. See In re A.L.D.H., 373 S.W.3d 187, 192-93 (Tex.App.2012). By that standard, this court can reverse a juvenile court’s judgment and order a juvenile court to terminate the parental rights of a parent only if the undisputed evidence requires that legal conclusion. I apply that standard when considering DHR’s appeal in this case.”
*1269 DHR proved that the mother and the father had engaged in an episode of domestic violence in October 2011 that prompted the removal of the child from their home. The juvenile court resolved conflicting evidence to determine that the child was not present during that altercation.[4] The juvenile court also found that DHR had not proven that the child had been adversely affected by the domestic-violence incident, which finding is supported by the record. Although the mother and the father did not complete all the goals established by DHR to address the domestic-violence problem, it was undisputed that there were no further reports of domestic violence between the mother and the father. In interrogatory responses submitted to the juvenile court, the father indicated that he and the mother had resolved their problems. Some exhibits also indicated that the mother and the father had overcome any domestic-violence problems. By the last day of trial, the father was incarcerated and the mother was residing with another man that she planned to marry after obtaining a divorce from the father. Based on that evidence, the juvenile court determined that the mother and the father did not present a continuing safety threat to the child. See D.O. v. Calhoun Cty. Dep’t of Human Res., 859 So.2d 439, 444 (Ala.Civ.App.2003) (“This court has consistently held that the existence of evidence of current conditions or conduct relating to a parent’s inability or unwillingness to care for his or her children is implicit in the requirement that termination of parental rights be based on clear and convincing evidence.”).
The juvenile court also rejected the contention that the mother and the father lacked the intellectual capacities to care for the child. Although some experts opined that the parents’ low intelligence would prevent them from properly caring for the child, the psychologist who evaluated the mother and the father noted as follows:
“On the surface, all of these presented factors would be negative in nature in regard to [the mother] parenting [the child]. However, [the mother] states that she has been [the child’s] caretaker for three years. If that is the case and [the child] appears to be in good shape, then it would lend credence that [the mother] is able to care for [the child].”
The evidence proved that the mother and the father had actually raised the child from birth until she was removed from their home. The DHR representative who removed the child from the home of the mother and the father testified that the home was adequate for the child and that the child appeared healthy and properly nourished, although, she said, the child’s clothes appeared too small. From that evidence, the juvenile court determined that the mother and the father had demonstrated that they could parent the child despite their intellectual deficiencies and that DHR had not established otherwise by clear and convincing evidence.
DHR argued that the mother and the father had abandoned the child by failing *1270 to visit the child for the 22 months preceding the trial. However, the mother testified that she was prevented from visiting the child by DHR. In its judgment, the juvenile court determined that DHR had unjustifiably terminated the mother’s visitation with the child. See J.B. v, DeKalb Cty, Dep’t of Human Res,, 12 So.3d 100, 111 (Ala.Civ.App.2008) (plurality opinion) (“Therefore, if the [parent] was, in fact, unintentionally, involuntarily, or justifiably prevented from interacting with the children as a parent, then his [or her] conduct cannot be considered abandonment.”). The father could not see the child because, in December 2013, he had been incarcerated when he could not pay bail while awaiting trial for crimes he claims he did not commit. The father indicated in his interrogatory responses that he remained willing to parent the child. The juvenile court impliedly determined that the father was not voluntarily withholding his presence from the child and that he had not abandoned the child. Compare J.L. v. State Dep’t. of Human Res., 961 So.2d 839 (Ala.Civ.App.2007).
Substantial evidence supports the key factual determinations made by the juvenile court that led the juvenile court to determine that DHR did not prove grounds for termination of the parents’ parental rights. Although DHR presented conflicting evidence from which the juvenile court could have reached a different conclusion, our standard of review as outlined above does not permit this court to reweigh the evidence. DHR did not present undisputed evidence of grounds for termination that would have entitled DHR to a judgment as a matter of law. On this record, the juvenile court reasonably could have determined that DHR had failed to meet its evidentiary burden. DHR has failed to show that the juvenile court committed reversible error, so the judgment must be affirmed.
I am not, however, unconcerned with the practical ramifications of the juvenile court’s judgment on the child. The record shows that DHR filed its petition to terminate parental rights on November 12, 2013. Although Ala.Code 1975, § 12-15-320(a), required that the juvenile court try the case within 90 days after the mother and the father had been served with the petition, the juvenile court did not complete the trial until 16 months after it began.[5] The evidence in the record shows that, during that time, the child bonded with her foster mother and lost contact with the mother and the father. Near the end of the trial, the juvenile court rightly expressed concern that the stability of the child, established during that period, would be disrupted if the petition was denied and the parents were reintroduced to the child. At this point, if rehabilitation efforts lead the juvenile court to return the child to the mother or the father, the child will undoubtedly experience the traumatic loss of another family no matter how delicately the case proceeds. At the very least, the juvenile court could have lessened that potential problem by acting promptly on the petition as required by law. The juvenile court laid great blame on DHR for mishandling this case, but the juvenile court also should consider its own culpability in unlawfully prolonging this matter to the detriment of the child.

. DHR tangentially points out that the juvenile court erred by considering a police report in reaching that determination, but DHR does not specifically argue that the judgment should be reversed on that basis, so I agree with the main opinion that DHR has waived that argument. See Gary v. Crouch, 923 So.2d 1130, 1136 (Ala.Civ.App.2005) (”[T]his court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties are waived.”).

. The juvenile court also violated § 12-15-320(a) by failing to enter a judgment within 30 days after the trial ended, In both instances, the juvenile court acted only after this court issued an order requiring the juvenile court to respond to DHR’s petition for a writ of mandamus to explain its tardiness.