

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00099-CV

_____

IN THE INTEREST OF L.G., A CHILD

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2017-2055-CCL2

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

On the petition of the Texas Department of Family and Protective Services (Department), Matt's parental rights to L.G.[1] were terminated on multiple statutory grounds.[2] On appeal, Matt challenges the legal and factual sufficiency of the evidence to support the various findings of the statutory grounds for termination[3] and the best-interest[4] finding. He also asserts that, because of his poverty, applying statutory grounds (F), (N), and (O) to him violated the Equal Protection and Due Process Clauses of the United States Constitution,[5] and the Due Course of Law Clause of the Texas Constitution.[6] We affirm the judgment of the trial court, because (1) sufficient evidence supports termination based on ground (O), (2) sufficient evidence supports the best-interest finding, and (3) Matt has not shown that ground (O), as applied to him, is unconstitutional.

*(1)      Sufficient Evidence Supports Termination Based on Ground (O)*

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). It is a fundamental right of parents to make decisions concerning "the care, custody, and control of their children." *Troxel v.*

---

[1]In this opinion, we will refer to the minor children by their initials and to their family members by pseudonyms. *See* TEX. R. APP. P. 9.8(b)(2).

[2]The trial court found that the grounds set forth in subsections (D), (E), (F), (N), and (O), of Section 161.001(b)(1) supported termination of Matt's parental rights. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (F), (N), (O) (West Supp. 2018).

[3]*See* TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2018).

[4]*See* TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2018).

[5]*See* U.S. CONST. amend. XIV, § 1.

[6]*See* TEX. CONST. art. 1, § 19.

*Granville*, 530 U.S. 57, 65 (2000). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). Therefore, we are required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* at 500. "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20).

To terminate the parental rights of any parent, the trial court must find, by clear and convincing evidence, that such parent has committed at least one statutory ground for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2018); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). This standard of proof necessarily affects our review of the evidence.

In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.). We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have

3

reasonably disbelieved or the credibility of which reasonably could be doubted. *J.P.B.*, 180 S.W.3d at 573.

In our factual sufficiency review, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine "whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *Id.* at 108 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266. "[I]n making this determination," we must undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26).

Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "the rights of natural parents are not absolute; protection of the child is paramount." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26).

"Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a [sustainable] finding that termination is in the child's best interest." *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *A.V.*, 113 S.W.3d at 362)); *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.); *see In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.). Assuming a valid best-interest finding, when the trial court finds more than one predicate ground for termination, we will affirm if any one ground is supported by sufficient evidence. *K.W.*, 335 S.W.3d at 769.

The record shows that L.G., who was in the sole custody of her mother, Kay, was removed from the home because both L.G. and Kay tested positive for marihuana and cocaine. Kay admitted to an ongoing use of marihuana, and cocaine use for four months. In addition, it was found that Kay would leave L.G. with a man she had known for only a few months and who also smoked marihuana.

At the time of L.G.'s removal, Matt had not seen Kay and L.G. for about seven months. He consistently denied any knowledge of Kay's drug use throughout the case. Before and during the pendency of the case, Matt lived in Cameron, Texas. As a result, the Department provided him with a courtesy caseworker located near Cameron.

The evidence also showed that Matt had visual and auditory problems, a considerable degree of disability, and depression and post-traumatic stress disorder. Matt spent nine and one-half years in prison for burglary, and he was released in 1999. He had a twenty-six-year-old daughter and three teenage children who lived with their mother in San Antonio. Matt estimated

5

that he was $25,000.00 behind on his child support obligations. Although Matt claimed to have contact with his other children, his psychologist testified that their mother's Facebook postings contradicted that claim. Matt also claimed that he was a very committed and involved parent, but his psychologist opined that Matt's lack of contact with L.G. during the pendency of this case contradicted that claim and that Matt was a highly questionable parental resource.

The Department and Matt agreed to a family service plan (FSP) on November 15, 2017. The Department reviewed it with him by telephone, and his attorney, who also attended, signed the FSP on Matt's behalf. Under the plan, Matt was required to participate in family visitations, maintain regular contact with his caseworker, maintain safe housing, undergo a psychological evaluation, participate in individual counseling, take parenting classes, complete his FSP, and other things. Matt acknowledged that it was explained to him at that time that, if he did not complete the services set forth in the FSP, he could lose his parental rights. The trial court approved the FSP and made it an order of the court on December 19, 2017. Matt signed the FSP that same day.

The Department's caseworker, Carla Carpenter, testified that Matt had not completed his counseling or parenting classes and had not provided safe housing. She testified that the FSP allowed visitation one time each month and that the Department had made arrangements for Matt and L.G. to meet at a location halfway to Cameron. However, the last time Matt had visited L.G. was in April 2018,[7] and the last time Carpenter had tried to arrange a visit was in August, but she never received any confirmation from Matt that he was available.

---

[7]The termination hearing took place on October 19, 2018.

Carpenter also testified that L.G. needs special services, such as occupational and physical therapy, that are essential to her emotional and physical development. L.G. also has extensive medical and medication needs. Carpenter testified that Matt had not contacted her to ask about any of L.G.'s medical or therapy needs. She also testified that both Kay and Matt knew that L.G. had severe medical problems since birth, but that they had not allowed her to have the medical care and therapies she needs. Carpenter testified that the Department was seeking termination of Matt's parental rights mainly for his failure to complete his service plan and that it was in the best interest of L.G.

On cross-examination, Carpenter acknowledged that Matt had never tested positive for drugs and that drugs were not a concern. She also testified that Matt had told her that he was dependent on his roommate, who had a single cab pickup, for transportation.

Lynsey Taylor, Matt's courtesy caseworker, testified that Matt lived in a one-bedroom apartment with a roommate. The roommate slept in the living area, and Matt and L.G. would sleep in the bedroom. Matt had clothes, toys, and a separate bed for L.G. Taylor had contact with Matt until August.

Taylor testified that the Department had made all the necessary referrals for services. She also testified that Matt had missed three drug tests, had not completed his counseling or his parenting classes, and had not visited L.G. since April. In August, she talked to Matt about employment, and he said he was not working because his doctor said he could not. When she asked him to provide a note from his doctor, he said he would if his primary caseworker requested it. Taylor testified that Matt had not provided her information showing he could financially

7

provide for L.G., but that he had also told her that he was pursuing a disability claim. Matt also told her that, if L.G. were placed in his care, he would be awarded an apartment at the Housing Authority and that he and L.G. would qualify for Medicaid. Taylor also testified that Matt claimed to have a problem getting in contact with his primary caseworker, but that she had never had a problem doing that. She also testified that, although Matt told her he could borrow a neighbor's van, when he missed his drug tests he claimed he did not have transportation.

Karen Kauffman, a licensed clinical psychologist, testified that she began Matt's treatment with protective parenting and sent him to an online parenting class. Although Matt was very conscientious at first, he had not made any appointments since July 18 and had not reached out to her to complete his counseling since then. She believed that he got disheartened when he did not receive his disability. Kauffman also testified that Matt got angry when she suggested that his oldest daughter could assist him with childcare, although Kauffman believed he was angry with his circumstances, not with her. Kauffman would not express an opinion about his parenting ability, but she expressed concern that he may not be able to provide the necessary care for L.G. because of his housing, his lack of visible means of support, and his inability to take care of himself. She also testified that Matt had not completed any services with her.

Matt testified that he completed his DNA testing and psychological evaluation and that he was working on the parenting classes. He admitted that he had no excuse for not completing his counseling and parenting classes. Although he claimed he could get Texas Temporary Assistance for Needy Families (TANF) benefits for L.G., if she were placed with him, he acknowledged that he may not be eligible without completing his parenting classes. He also acknowledged reacting

8

incorrectly towards Kauffman, but explained that he was frustrated with his situation. He said he should have contacted her, but he thought she would be upset with him. He had not seen L.G. since April and claimed he stopped visitations because he had no transportation. He acknowledged, however, that the Department had provided resources to help him and arranged for visitation in Palestine. He also admitted that he had not contacted the Department recently to check on L.G., but claimed that he had the majority of the time. Matt acknowledged that it was his fault for not contacting anyone. He knew some of L.G.'s physical and developmental issues, but he did not know what therapies she was receiving, what behavioral issues she was having, or what medications she was taking. He also did not know L.G.'s birthday.

Although Matt acknowledged that he still had transportation and housing issues, he claimed that he was on a list to obtain a two-bedroom apartment and that a friend would provide transportation for L.G.'s doctor appointments. He claimed that he had been working at U-Haul since September and that his income varied; his last weekly paycheck was $265.29. He testified that he would be eligible for Medicaid if he got disability or if L.G. were placed with him and that he would also be able to get food stamps. Matt went to court on his disability claim in early August and was still waiting on a decision. He claimed that, if the decision were favorable, he would be able to get housing and transportation. He asserted that his disability attorney had told him that he would probably prevail on his disability claim.

Stacey Wicke, with whom L.G. is placed, testified that, when L.G. came to her in March 2018,[8] she could not talk and was barely walking. L.G. was very frustrated because she was not

---

[8]L.G. was two years old at the time.

9

able to express her needs and had a lot of temper tantrums. Her pediatrician and therapies have helped L.G. improve, so she had begun saying little sentences, but was still behind. Wicke testified that, at the time of the hearing, L.G. was doing very well, was thriving, and was very determined. She testified that she and her husband have provided L.G. with a safe and stable home, that L.G. called them "Mom" and "Dad," and that she ran up and gave them hugs and kisses whenever they walked into a room. L.G. was receiving speech and physical therapy and will receive general and occupational therapy as she needs them. Wicke and her husband have learned how to supplement the therapies at home and work with L.G. daily. Wicke testified that she and her husband can provide L.G. with a stable home and meet all of her medical and other needs. They planned to adopt L.G., if the parental rights were terminated.

> Ground (O) provides that parental rights may be terminated if the parent has
>
> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(b)(1)(O). In his first and sixth issues, Matt challenges the legal and factual sufficiency of the evidence supporting the trial court's termination of his parental rights under ground (O).

In his first issue, Matt points out that the trial court never entered temporary orders concerning him. Initially, he appears to argue that only temporary orders issued under Section 105.001(a) of the Texas Family Code can satisfy ground (O)'s requirement of "a court order that specifically established the actions necessary for the parent to obtain the return of the child." *Id.*

10

Matt does not cite any statutory or caselaw authority to support this proposition. Moreover, nothing in Section 105.001(a) requires that such a provision be contained in a temporary order. *See* TEX. FAM. CODE ANN. § 105.001(a) (West 2014).

In this case, the trial court's status hearing order included an order "that, except as specifically modified by this order or any subsequent order, the plan of service for the parent is APPROVED and made an ORDER of this Court."[9] As noted above, Matt's FSP set forth the services and actions required of Matt. Since the trial court made the FSP an order of the court, the FSP in this case qualified as a court order that established the actions necessary for Matt to obtain the return of the child, as required under ground (O).

In addition, Matt contends that the trial court did not give him the admonishments required by Section 263.202(b)(2) of the Texas Family Code.[10] But that subsection of the Family Code does not require an admonishment from the trial court. *See* TEX. FAM. CODE ANN. § 263.202(b)(2). Also, Matt signed the following acknowledgment contained in his FSP:

> TO THE PARENT: THIS IS A VERY IMPORTANT DOCUMENT. ITS PURPOSE IS TO HELP YOU PROVIDE YOUR CHILD WITH A SAFE ENVIRONMENT WITHIN THE REASONABLE PERIOD SPECIFIED IN THE PLAN. IF YOU ARE UNWILLING OR UNABLE TO PROVIDE YOUR CHILD WITH A SAFE ENVIRONMENT, YOUR PARENTAL AND CUSTODIAL DUTIES AND RIGHTS MAY BE RESTRICTED OR TERMINATED OR YOUR CHILD MAY NOT BE RETURNED TO YOU. THERE WILL BE A COURT

---

[9]Although Matt acknowledges that the Texas Family Code specifically provides that, after reviewing the service plan, "the court shall incorporate the original and any amended service plan into the orders of the court," he complains that none of the trial court's orders "makes this statement." TEX. FAM. CODE ANN. § 263.106 (West 2014). The trial court's December 19, 2018, order substantially complies with Section 263.106.

[10]Section 263.202(b)(2) requires the trial court, in its status hearing order, to make findings that the parent has read and understood the FSP and has been advised that, "unless the parent [is] willing and able to provide the child with a safe environment" as specified in the FSP, their parental rights may be subject to restriction or termination. TEX. FAM. CODE ANN. § 263.202(b)(2) (West Supp. 2018).

11

HEARING AT WHICH A JUDGE WILL REVIEW THIS SERVICE PLAN.

Since the FSP was made an order of the trial court, the trial court substantially complied with the requirements of Section 263.202(b)(2).

In his sixth issue, Matt argues that, because he was disabled and unemployed, he was unable to afford the housing that the Department deemed safe and was unable to afford to continue visitation. In addition, he argues that he substantially complied with the other requirements of the FSP.

Partial compliance with a court-ordered service plan does not constitute compliance under ground (O). *J.F.C.*, 96 S.W.3d at 278; *In re J.M.T.*, 519 S.W.3d 258, 267 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). "Ground O does not quantify any particular number of provisions of the family service plan that a parent must not achieve in order for the parental rights to be terminated." *In re B.H.R.*, 535 S.W.3d 114, 122 (Tex. App.—Texarkana 2017, no pet.). When there is disputed evidence, we presume that the trial court, as fact-finder, resolved the conflict in favor of its finding if it could reasonably do so. *J.P.B.*, 180 S.W.3d at 573.

According to the testimony at trial, Matt ceased going to counseling and working on his parenting classes in July, three months before the termination hearing, after he became angry at a suggestion made by his counselor. Matt testified that, after that incident, he never contacted his counselor to continue his counseling and parenting classes and that he had no excuse for not finishing those services. In addition, Matt did not maintain contact, even by telephone, with his caseworker and admitted that his failure to maintain telephone contact was his fault. Although he also claimed to have tried to contact his caseworker, the trial court, as the fact-finder, could

reasonably resolve Matt's conflicting testimony in favor of its finding. *See id.*

Thus, even if we discount Matt's failure to provide suitable housing and to maintain visitation with L.G., the evidence was factually and legally sufficient to show that Matt only partially complied with the FSP. *See J.F.C.*, 96 S.W.3d at 278. Considering the entire record, we find that a reasonable fact-finder could have formed a firm belief or conviction as to the truth of the finding under ground (O). *See id.* at 266. Also, we find that the disputed evidence that the fact-finder could not have credited in favor of its finding under ground (O) is not so significant that the fact-finder could not have reasonably formed a firm belief or conviction as to the truth of its finding under that ground. *See id.* Therefore, we find that there was sufficient evidence to support the trial court's termination of Matt's parental rights under ground (O).[11] We overrule Matt's first and sixth issues.

*(2)     Sufficient Evidence Supports the Trial Court's Best-Interest Finding*

Matt also challenges the factual and legal sufficiency of the evidence supporting the trial court's finding that termination of his parental rights was in the best interest of L.G. Termination of the parent-child relationship requires that termination be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2). "There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without the most

---

[11]Since we find that sufficient evidence supports termination of Matt's parental rights under ground (O), we need not address his second, third, fourth, and fifth issues, which contest the factual and legal sufficiency of the evidence under Grounds (D), (E), (F), and (N), respectively.

solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)). It is not sufficient to merely show that the child might be better off living elsewhere with more prosperous parents. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.); *see In re A.L.D.H.*, 373 S.W.3d 187, 194 (Tex. App.—Amarillo 2012, pet. denied). In our best-interest analysis, we focus on the best interest of the child, not the best interest of the parent. *B.H.R.*, 535 S.W.3d at 122 (citing *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ)).

> To determine the best interests of the child, courts consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*N.L.D.*, 412 S.W.3d at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2018). It is not necessary to prove all of these factors as a condition precedent to parental termination. *C.H.*, 89 S.W.3d at 27; *N.L.D.*, 412 S.W.3d at 819. In certain cases, evidence relating to one factor may be adequate to support a finding that termination is in the best interest of the child. *Id.* (citing *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *overruled on other grounds by J.F.C.*, 96 S.W.3d at 267 n.9). "A parent's inability to provide adequate care for a child, lack of parenting skills, and poor judgment

may be considered when looking at the child's best interest." *B.H.R.*, 535 S.W.3d at 123 (citing *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.)). Further, evidence used to support the grounds for termination of parental rights may be considered in the best-interest analysis. *Id.* (citing *C.H.*, 89 S.W.3d at 28).

L.G. was two years old at the time of the termination hearing, and she was unable to express her desires. However, there was testimony that L.G. was bonded with her foster parents, called them "Mom" and "Dad," and was well cared for by them. The evidence also showed that Matt had not seen L.G. for the six months preceding the termination hearing and that he had not stayed in contact with his caseworker to keep abreast of L.G.'s medical and developmental issues. Some of our sister courts of appeals have considered similar evidence in determining the desires of the child when the child was too young to express her desires. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re J.M.*, 156 S.W.3d 696, 706 (Tex. App.—Dallas 2005, no pet.). We find this factor weighs in favor of termination.

Matt's testimony showed that he understood some of L.G.'s physical and developmental issues, but was uninformed about her current medical, developmental, and emotional issues. Although there was some testimony to the contrary, most of the testimony also showed that, for a significant time before the termination hearing, Matt showed little to no interest in obtaining any information regarding L.G. By contrast, Wicke's testimony showed that the foster parents understood L.G.'s issues and were willing and able to provide L.G. with the necessary medical and therapeutic care to meet her needs. We find that the second and third factors favor termination.

The testimony showed that the parental abilities of the Wickes were sufficient to meet

L.G.'s needs. It also showed that Matt had tried to provide for some of her needs, in anticipation of her being returned to him. However, although Matt maintained that he was a capable and involved parent, his psychologist testified that Matt's contentions were contradicted by Matt's lack of involvement in his other children's lives and his failure to maintain visitation with L.G. The psychologist also opined that Matt was not a good parental resource. In addition, Matt did not finish his counseling or his parenting classes, both of which were designed to enable him to be a better parent. We find that factor four favors termination.

Although not entirely clear, it appears that the programs available to assist L.G. would be available for both Matt and the Wickes. Therefore, we find this factor neutral.

The Department's plans were to maintain placement with the Wickes and eventually see adoption of L.G. by the Wickes. Matt expressed plans to obtain a two-bedroom apartment and suitable transportation, if L.G. were returned to him. However, those plans were dependent on his prevailing on his disability claim, which was not guaranteed. He also planned to obtain Medicaid and food stamps for L.G. We find that the sixth factor weighs somewhat in favor of termination.

It was uncontested that the Wickes have provided, and will continue to provide, L.G. with a stable and safe home environment. Matt had made provisions in his current apartment to accommodate L.G. and planned to obtain better accommodations in the future. However, Matt was unemployed during most of the case and provided contradictory testimony regarding whether he was disabled from, or able to, work during that time. Although Matt believed that he would prevail on his disability claim, the outcome was uncertain at the time of the termination hearing. On this record, we find that the seventh factor favors termination.

16

Matt had not seen L.G. for six months before trial. He also had not reached out to his caseworkers to learn anything about L.G. or her well-being. In addition, he abruptly ended his counseling and parenting classes and appears to have made no effort to resume them. These omissions indicated that he did not have a proper parent-child relationship with L.G. Although he blamed his non-visitation on a lack of transportation, he also maintained that he had several sources for transportation. He admitted that he had no excuse for not reaching out to keep current on L.G. and her well-being and that he had no excuse for not continuing and finishing his counseling and parenting classes. We find that factors eight and nine also favor termination.

Considering the entire record, we find that a reasonable fact-finder could have formed a firm belief or conviction that termination of Matt's parental rights was in the best interest of L.G. *See J.F.C.*, 96 S.W.3d at 266. We also find that the disputed evidence that the fact-finder could not have credited in favor of its best-interest finding is not so significant that the fact-finder could not have reasonably formed a firm belief or conviction that termination of Matt's parental rights was in the best interest of L.G. *See id*. Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's best-interest finding. We overrule Matt's seventh issue.

*(3)    Matt Has Not Shown that Ground (O), as Applied to Him, Is Unconstitutional*

In his eighth, ninth, and tenth issues, Matt contends that, because his income is less than the federal poverty guidelines, the application of Section 161.001(b)(1,) subsections (F), (N), and (O), to terminate his parental rights is unconstitutional. In regard to ground (O),[12] Matt argues

---

[12]Since we have found that sufficient evidence supports the trial court's termination under ground (O), we need only address Matt's constitutional challenge to that ground.

that, since the tasks required under the FSP depended on him having a certain level of funds, the application of ground (O) deprived him of equal protection and due process under the United States Constitution and the due course of law under the Texas Constitution.[13]

"[A]n as-applied challenge asserts that a statute, while generally constitutional, operates unconstitutionally as to the claimant because of [his] particular circumstances." *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 709 (Tex. 2014) (citing *City of Corpus Christi v. Pub. Util. Comm'n of Tex.*, 51 S.W.3d 231, 240 (Tex. 2001)); *In re S.K.A.*, 236 S.W.3d 875, 887 (Tex. App.—Texarkana 2007, pet. denied). There is a presumption in favor of the constitutionality of a statute, and the party attacking its constitutionality has the burden. *Spring Branch I.S.D. v. Stamos*, 695 S.W.2d 556, 558 (Tex. 1985). In an as-applied challenge, the claimant has the burden to show that the statute operates unconstitutionally when applied to his particular circumstances. *S.K.A.*, 236 S.W.3d at 887; *In re B.S.W.*, 87 S.W.3d 766, 771–72 (Tex. App.—Texarkana 2002, pet. denied), *overruled subsilentio*, *on other grounds*, *In re A.V.*, 113 S.W.3d 355 (Tex. 2003). The constitutionality of a statute should not be addressed when there is no showing that the statute's operation harmed the appellant. *In re K.J.T.M.*, No. 06-09-00104-CV, 2010 WL 1664027, at *6 (Tex. App.—Texarkana Apr. 27, 2010, no pet.) (mem. op.); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 625–26 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

---

[13]Matt asserted these challenges in his second amended motion for new trial.

In support of his argument, Matt points primarily to his testimony at his motion for new trial hearing. At that hearing, Matt testified that he was impaired from continuing his visitation and from providing safe housing by his lack of income. However, although he testified that his lack of income made his ability to attend counseling, and to complete his parenting classes and other services, very difficult, he did not testify that he was prevented from completing these services by his lack of income.[14] He also acknowledged that the State had paid for all of the services required under the court-ordered service plan.

As we previously noted, partial compliance with a court-ordered service plan does not constitute compliance under ground (O). *J.F.C.*, 96 S.W.3d at 278; *J.M.T.*, 519 S.W.3d at 267. We also found sufficient evidence supporting termination under ground (O) without considering his discontinuance of visitation and his lack of safe housing. Therefore, even if Matt made a sufficient showing that his poverty prevented him from continuing visitation and securing safe housing, he has failed to show that his poverty prevented him from completing the other services required under the court-ordered service plan. Consequently, we overrule Matt's eighth, ninth, and tenth issues.

For the reasons stated, we affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted:     March 7, 2019
Date Decided:      April 10, 2019

---

[14]We also note that Matt testified at trial that he had no excuse for not completing his counseling and parenting classes.

19