In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-20-00299-CV**
**IN THE INTEREST OF E.M.R.**

**On Appeal from the County Court at Law**
**Polk County, Texas**
**Trial Cause No. PC06827**

## MEMORANDUM OPINION

Appellant C.B. ("Cindy"), appeals the trial court's Order in a Suit to Modify Parent-Child Relationship that, among other things, denied an Amended Petition for Termination and Adoption asking the trial court to terminate the parental rights of R.R. ("Robert"), the adjudicated father of six-year-old, E.R. ("Eric"), and also seeking Eric's adoption by Cindy's spouse, D.B. ("David").[1] We affirm the trial court's judgment.

---

[1] A parent of the child has standing to bring a suit for termination. Tex. Fam. Code Ann. § 102.003(a)(1). A stepparent of the child has standing to file an original suit for termination of the parent-child relationship joined with a petition for

## Background

Eric was born on April 2, 2014, to Robert and Cindy. Months later, Robert and Cindy's relationship ended. In June of 2015, the trial court signed an order that appointed Cindy and Robert joint managing conservators of Eric, designated Cindy as the parent with the exclusive right to determine Eric's residence, ordered Robert to pay child support to Cindy, and established that Robert would have possession of the child in accordance with the provisions of the Texas Standard Possession Order. Cindy married David.

On February 18, 2020, Cindy and David filed an Original Petition for Termination and Adoption of Stepchild, and they subsequently filed an amended petition. In their Amended Petition for Termination and Adoption of Stepchild, they requested that the trial court terminate Robert's parental rights, and they asked the court to allow David to adopt Eric. The amended petition alleged that Robert

> …has, or will prior to the trial in this cause, -
> a. voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months;
> b. failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of this petition; and/or
> c. executed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided for by chapter 161 of the Texas Family Code.

---

adoption. *Id.* § 102.005(1). To protect the identities of the minor, we use pseudonyms to refer to the children and their family members. *See* Tex. R. App. P. 9.8(b)(2).

*See* Tex. Fam. Code Ann. § 161.001(b)(1)(C), (F), (K). The amended petition alleged that termination of Robert's parental rights and Eric's adoption by David was in Eric's best interest. *See id.* § 161.001(b)(2). The amended petition sought, in the alternative, that the trial court modify the earlier 2015 order (1) by reducing Robert's periods of possession and access to Eric and requiring that those periods be supervised and (2) by increasing Robert's child support obligation due to an increase in his income and other changes of circumstances of the parties and the child. Cindy and David also sought attorney's fees, expenses, and costs through trial and appeal.

Robert filed a pro se answer, generally denying the allegations in the petition, and he appeared pro se at trial. After a bench trial, the trial court signed an Order in Suit to Modify Parent-Child Relationship (1) denying the petition to terminate Robert's parental rights; (2) finding that the material allegations in the alternative petition to modify were true and granting the requested modification by modifying the terms of possession and access and increasing Robert's child support obligation.[2] Upon Cindy's request, the trial court filed Findings of Fact and Conclusions of Law. The trial court's findings of fact and conclusions of law included the following, in relevant part:

---

[2] Because Cindy's arguments on appeal only concern the trial court's denial of the petition to terminate Robert's parental rights, we include facts and evidence related to the trial court's modification only as necessary.

[] [Robert] paid to [Cindy] through the Attorney General child support as ordered when due from December 11, 2018 through a payment paid on August 20, 2019.

[] There was no consecutive period of 12 months ending within 6 months prior to the filing of the petition where [Robert] failed to support the child.

[] [Robert] did not voluntarily leave the child alone or in the possession of another without providing adequate support of the child and remain away for a period of six months.

. . .

[] [Robert] wishes to remain the father of the child.

[] The positive effects of the termination of the father's parental rights as opposed to the continuation of the child's current circumstances, when considered in light of the "Holl[e]y factors," was not sufficient to overcome the presumption that the preservation of the parent-child relationship is in the best interest of the child.

[] [Robert] last visited with the child in November or December, 2017.

[] Neither party has cooperated with the other party concerning the visitation of [Robert] with the child.

. . .

[] No statutory ground for termination of the parent-child relationship was established by clear and convincing evidence.

[] The evidence did not establish by clear and convincing evidence that it would be in the best interest of [Eric] to terminate the parental rights of [Robert].

The trial court denied Cindy's motion for new trial, and Cindy appealed.

Evidence at Trial

Robert's Testimony

Robert testified that his and Cindy's relationship ended in 2015, a few months after Eric's birth. Robert agreed that a 2015 Polk County order named him and Cindy both joint conservators of Eric; gave Cindy the right to determine Eric's primary residency; gave Robert standard possession visits the first, third, and fifth weekends

4

of the month; and required Robert to pay $240 in child support a month and to provide health insurance for Eric.

Robert testified that at the time of the 2015 order he was at military basic training at Fort Jackson and the military moved him a month later to Georgia. According to Robert, he returned from deployment in November 2017 and then was at Fort Hood until he moved to Lufkin almost three years before trial. When he got out of the military, he worked at Tanner lumber company in Kountze from April to July of 2018 making $10 an hour and then he worked at Fleetwood in Diboll from July 2018 to July 2019 making $12 an hour. He testified that he could not remember how many hours he worked a week at Tanner and that he worked forty to forty-five hours a week at Fleetwood. Robert testified that he received his CDL and worked for Mesa Innovations from August 2019 to November 2019 that paid an annual salary of $35,000 to $40,000. He then worked for Atkinson Towing from November 2019 to May 2020, making $15 an hour and working forty to sixty hours a week. He testified that at the time of trial he was working for Easley Crane Service for $18 an hour and working forty to forty-five hours a week.

Robert testified that from the time of the 2015 order until 2017, he saw Eric about twenty times. According to Robert, since 2017 he had not seen Eric because Cindy "made it hard" for Robert to see Eric and "would never follow through[]" on their plans to meet up. Robert testified that Cindy moved, and he did not have her

5

address. Robert admitted he did not make much effort to contact an attorney or Lone Star Legal Aid in an effort to see his son because after his deployment he suffered from PTSD and struggled to "reintegrate with society."

According to Robert, since the 2015 order he believed he was arrested once for public intoxication but could not remember the date of the arrest. He testified that he did not remember if he has ever smoked marijuana or used any substance that has not been prescribed to him, and he did not remember showing up intoxicated to one of his visits with Eric.

Robert testified that he started providing insurance for Eric in July of 2020 but did not provide insurance for Eric before that. Robert acknowledged that he had been behind on his child support payments at times, and that from May of 2018 through December of 2018 and August of 2019 through April 2020 he made no child support payments. According to Robert, even though he was working, he could not pay those payments because he had to provide for his other family. He testified that for the approximate two-year time he did not pay for Eric's insurance it was because he could not afford it, and most of the companies he was working for did not provide insurance. Robert testified that he was served the petition in this case in February of 2020, and he started making child support payments again in April of 2020 after a letter from the attorney general was sent to Robert's new job and the child support was deducted automatically from Robert's pay. In April of 2020, his income tax

refund of $1063 also was applied to his child support arrears, as well as a $483 income tax stimulus payment in May of 2020. Exhibits documenting Robert's child support payments were admitted into evidence and Robert agreed that the records were accurate.

Robert testified that he had nothing negative to say about David as a father and that he appreciated that David treated Eric well. According to Robert, he believed Eric would recognize him if he walked into the room. Robert testified that he had bought Christmas presents for Eric but never sent them because he tried to call and meet up with Cindy, but she would not answer his calls. Robert testified he or his extended family never sent Eric a birthday present because they did not know where to send the presents. He acknowledged he knew where Cindy's parents lived but testified that he and Cindy's father do not get along.

Robert testified that he wanted to be a part of Eric's life and he wanted Eric to know who he is, but that Cindy had been "violating [Robert's] court rights ever since they were put in place -- especially after deployment." According to Robert, he is not a bad person, he served his country, and he should not have his parental rights terminated because he did not pay child support or insurance for Eric for a while when Robert was having financial problems.

Cindy's Testimony

Cindy testified that Eric was born in 2014 when she and Eric were a couple, and they broke up about five months later in September of 2014. According to Cindy, Robert did not see Eric from September 2014 until June 2015, that Robert saw Eric about five times sporadically from June 2015 to November of 2016, and then had not seen him since. Cindy testified that the visits were "very last-minute[,]" Robert would always be late and "[m]ost of these visits happened at 9:00, 10 o'clock at night, with him one time being intoxicated and it -- him leaving 30 minutes later." Cindy testified that the visits were usually for only about thirty minutes but that one of the visits was about a six-hour visit when they went to the zoo. Cindy testified that law enforcement was called on one occasion when Robert vandalized David's property. According to Cindy, the last time Robert contacted her was in April of 2018, she filed suit in February of 2020, and since the suit had been filed, neither Robert, nor any one on his behalf, had contacted her because Robert wanted to see Eric. Cindy denied withholding Eric from Robert and denied that Robert had seen Eric twenty times.

Cindy testified that the last time she spoke to Robert, Eric was sick, and she took Eric to the doctor and the doctor informed her that Eric no longer had insurance. According to Cindy, she called Robert and he told her that he "wasn't going to help [her] anymore, because [she] was keeping [Eric] from him and not to call this

8

number anymore, do not reach out anymore." According to Cindy, termination of Robert's parental rights is in Eric's best interest. Cindy testified that she and David began dating in 2015, that Eric had known David for five years, David was the only father figure that Eric has known, and Eric had called David "daddy" for about three years. Cindy testified that Eric "110 percent would not know[]" Robert if he walked into the room and that it would confuse and upset Eric if Robert was reintroduced into his life.

David's Testimony

David testified that he wanted to adopt Eric because he needed "a father that is there, and I do love him dearly." Photographs of David spending time with Eric were introduced into evidence. David testified that he considered Eric to be his own son, loved him the same as his other child, and believed adopting Eric is in Eric's best interest. David testified that he had been around Eric almost daily for five years and that Eric would not know Robert if he walked into the room.

Robert's Mother's Testimony

Robert's mother testified that after deployment Robert had difficulty reintegrating into civilian life and his son's life. Robert's mother disagreed with Cindy's testimony that Robert had not seen Eric. From the phone calls she saw Robert make, she believed that Robert had reached out to Eric multiple times. She admitted that she could not remember the date of the last time she saw Robert try to

9

call Cindy and try to see Eric but that it would not have been in 2020, 2019, or 2018. According to Robert's mother, to her knowledge Robert had not seen Eric since Robert got out of the Army. She testified that Eric needed Robert in his life. She testified that Robert also had one other biological child.

Standard of Review and Applicable Law

A parent's right to the "companionship, care, custody, and management" of his or her children is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A termination decree is complete, final, irrevocable[,] and divests for all time that natural right as well as all legal rights, privileges, duties[,] and powers with respect to each other except for the child's right to inherit." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).

The decision to terminate parental rights must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001(b). Under the Family Code, "'[c]lear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b); *In re J.L.*, 163 S.W.3d at 84.

10

Cindy challenges the legal and factual sufficiency of the evidence supporting the trial court's decision not to terminate Robert's parental rights. As the petitioner, Cindy had the burden to prove one of the grounds for termination by clear and convincing evidence. *See* Tex. Fam. Code Ann. § 161.001(b)(1). In reviewing the challenge to the legal sufficiency of the evidence of the trial court's denial of the petition to terminate, we apply the as-a-matter-of-law standard of review. *In re A.L.D.H.*, 373 S.W.3d 187, 192 (Tex. App.—Amarillo 2012, pet. denied). This means that Cindy must show that the evidence established, as a matter of law, all vital facts supporting the issue. *See id.* In conducting a legal sufficiency review, we must review the entire record in the light most favorable to the finding of the trier of fact. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In so doing, we assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009) (citing *In re J.F.C.*, 96 S.W.3d at 266). However, we do not disregard all evidence that does not support the finding, as disregarding undisputed facts that do not support the finding could skew the analysis. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

When reviewing the factual sufficiency of the evidence, because we are faced with the factfinder's answer that a predicate statutory ground had *not* been met and termination is *not* in the best interest of the child, we must review the evidence to

ascertain if the evidence was of such a character that it had to produce in the mind of the factfinder a firm belief or conviction that a statutory ground for termination had been met and that termination was in the best interest of the child. *See id.* (citing *In re J.F.C.*, 96 S.W.3d at 267).

Trial courts have wide latitude in determining a child's best interest. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). There is a strong presumption that the best interest of a child is served by keeping the child with his parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also* Tex. Fam. Code Ann. § 153.131(b). The Texas Supreme Court has articulated factors that may be considered when determining whether termination of parental rights is in the best interest of the child, including: the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the individuals seeking custody, the programs available to assist these individuals to promote the best interest of the child, the plans for the child by these individuals or by the agency seeking custody, the stability of the home or proposed placement, the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (setting forth the "*Holley* factors" and noting "[t]his listing

is by no means exhaustive[]"). No specific *Holley* factor is controlling, and evidence of one factor may be enough to support a finding that termination is in the child's best interest. *See M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 311 (Tex. App.—El Paso 2009, pet. denied) ("Undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of a child.") (citing *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)); *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The best-interest determination may rely on direct or circumstantial evidence, subjective factors, and the totality of the evidence. *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

Statutory Ground

In her first two issues, Cindy challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that Robert did not voluntarily leave the child with another without providing adequate support and remain away for at least six months. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(C). Cindy argues that the uncontroverted evidence established each of the elements of section 161.001(b)(1)(C), the first predicate ground alleged in her petition. According to Cindy, the evidence showed that Robert (1) paid no support and remained away from September 2014 until June 2015; (2) paid no support and did not visit Eric from May through December 2018; and (3) paid no support and did not contact Eric or Cindy from August 2019 to April 2020.

13

As for the time of September 2014 until June 2015, the trial court heard Robert's testimony that during that time he was at military boot camp but heard no evidence of the amount of support Robert provided. For the time period of May 2018 to December 2018 and August 2019 to April 2020, the trial court heard Robert testify that although he did not pay child support during those periods, that from 2017 until trial, Cindy made it difficult for him to see Eric, that she moved and he did not know her address, and that she would not answer when he called or follow through on plans they made for him to see Eric. The trial court heard Cindy's testimony denying that she ever withheld Eric from seeing Robert. The trial court could have believed Eric and disbelieved Cindy.

We cannot conclude that Cindy has proven as a matter of law, by clear and convincing evidence, that Robert voluntarily left Eric alone or in the possession of another without providing adequate support for Eric and remained away for a period of at least six months. *See* Tex. Fam. Code Ann. 161.001(b)(1)(C); *In re A.L.D.H.*, 373 S.W.3d at 192. Further, reviewing the same evidence, even in a neutral light, yields that same result on the issue of factual sufficiency of the evidence. Accordingly, because we have found that the evidence did not prove as a matter of law the statutory ground for termination of Robert's parental rights under section 161.001(b)(1)(C) and the evidence at trial would not necessarily lead the factfinder

to form a firm belief or conviction that Robert committed the predicate ground of section 161.001(b)(1)(C), we overrule issues one and two.

Best Interest of the Child

In issue three, Cindy argues that the trial court abused its discretion in finding that termination of Robert's parental rights was not in Eric's best interest. Cindy argues that the trial court abused its discretion when it found, without addressing any of the individual *Holley* factors, that the positive effects of termination was not sufficient to overcome the presumption that preservation of the parent-child relationship was in the best interest of the child. According to Cindy, each of the "*Holley* factors" weighs in favor of the conclusion that termination of Robert's parental rights was in Eric's best interest because Eric had been living with Cindy and David for five years and had a good relationship with them living in a stable home, Eric had no relationship with Robert and would not even recognize him, Robert had only been involved in Eric's life sporadically and provided inconsistent support, Robert suffered from personal issues and his lack of effort in contacting and visiting with Eric showed deficiencies in his parental ability, Eric refers to David as his father and David wants to adopt Eric, and Robert has no plans for Eric and has not been involved in his life.

Even so, the trial court heard Robert's testimony that he wanted to be a part of his son's life and did not want the trial court to terminate his parental rights. The

15

trial court heard Robert's testimony that from the time of the 2015 order until his deployment in 2017, he saw Eric about twenty times. The trial court also heard Robert's testimony that Cindy was not cooperative in allowing him to see Eric from 2017 until the time of trial.

As an appellate court, we cannot reweigh the evidence and alter the trial court's credibility determinations. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We conclude that Cindy has failed to prove as a matter of law, by clear and convincing evidence, that termination of Robert's parental rights is in Eric's best interest. *See In re A.L.D.H.*, 373 S.W.3d at 192. We reach the same conclusion reviewing the same evidence in a neutral light. The evidence that the trial court heard on the issue of the best interest of the child was contested and the factfinder is responsible to resolve conflicts in the testimony and pass upon the credibility of the witnesses. *See id.* at 194. The evidence did not prove as a matter of law that termination of the parent-child relationship was in the best interest of the child and the evidence at trial would not necessarily lead the factfinder to form a firm belief or conviction that termination is in the best interest of the child. *See In re J.L.*, 163 S.W.3d at 84. We overrule issue three.

Having overruled Appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

                _____

                    LEANNE JOHNSON
                           Justice

Submitted on September 9, 2021
Opinion Delivered February 3, 2022

Before Golemon, C.J., Kreger and Johnson, JJ.